## HOWELL v. WALKER.

### Opinion delivered February 16, 1914.

1. MORTGAGES—FUTURE ADVANCES.—A mortgage securing future advances is valid. (Page 367.)

2. MORTGAGES—FUTURE ADVANCES—VALIDITY.—A mortgage is sufficient to secure future advances, if it contains a general description, sufficient to embrace the liability intended to be secured, and to put a person examining the record upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the incumbrance. (Page 367.)

3. MORTGAGES—FUTURE ADVANCES—TIME LIMIT.—A mortgage given to secure a note and "all indebtedness that may accrue and remain due and unpaid after the said year 1909 * * *," will not be construed to include and cover indebtedness for advances made after the year 1909. (Page 368.)

4. MORTGAGES—CONDUCT OF MORTGAGEE—ESTOPPEL.—A prior mortgagee is not estopped to assert its rights under its mortgage, as against a subsequent mortgagee, because it furnished the mortgagor an incomplete statement of its account with him, which the latter showed the second mortgagee, when the statement was not given for that purpose. (Page 370.)

5. MORTGAGES—ITEMIZED ACCOUNT—FORECLOSURE.—Evidence held to show that the mortgagee served the mortgagor with an itemized account, before bringing proceedings to foreclose on a mortgage given to secure a note and advances. (Page 370.)

6. MORTGAGES—MORTGAGE ON LANDS—NECESSARY PARTIES.—The trustee in a mortgage on land is a necessary party to a foreclosure proceeding. (Page 371.)

7. MORTGAGES—ASSIGNMENT OF INTEREST—FORECLOSURE—NECESSARY PARTIES.—The original beneficiary in a mortgage, who has assigned his interest, is not a necessary party to a foreclosure suit on the same. (Page 371.)

8. CHATTEL MORTGAGES—TRUSTEE—FORECLOSURE—ACTION FOR POSSESSION.—The conveyance of chattels to a trustee as security for a debt to another, places the legal title in the trustee, and he, alone, can maintain an action at law to recover possession for the purpose of foreclosing the lien under the power contained in the conveyance. (Page 371.)

9. ANIMALS—OWNERSHIP OF OFFSPRING.—Kirby's Digest, § 5397, providing that a mortgage lien "shall not extend to, nor cover the increase or offspring of an animal that is subject to such lien." merely changes the common-law rule, and does not prevent the parties from stipulating in a mortgage that the same shall cover the offspring. (Page 372.)

10. CHATTEL MORTGAGES—DAM AND COLT—LIEN.—A mortgage covering a mare, which expressly named the increase or offspring, is sufficient to constitute an equitable lien, which became fixed on the colt as soon as it came into being. (Page 372.)

11. CHATTEL MORTGAGES—SUBSTITUTED PROPERTY—EQUITY MAXIM.—An agreement for substitution in a chattel mortgage is valid in equity between the parties, under the maxim that equity treats that as done which the parties intended should be done. (Page 372.)

Appeal from St. Francis Chancery Court; *Edward D. Robertson*, Chancellor; reversed.

*J. W. Story*, for appellants.

1. In a foreclosure proceeding against personal property to enforce the collection of an account, the circuit court has no jurisdiction unless the mortgagee has complied with the statute requiring the delivery to the mortgagor of a verified statement of his account, etc. Kirby's Dig., § 5415; 92 Ark. 313; 65 Ark. 316. The cause should, therefore, have been dismissed as to the

proceeding to foreclose the mortgage executed to secure the Beck company account, for want of jurisdiction.

2. The J. W. Beck Company and Walker, its assignee, are estopped by the statement of account rendered February 1, 1911, by the Beck Company to Howell. 28 Ark. 447.

3. The complaint in so far as it sought to foreclose the trust deed of December 8, 1909, should have been dismissed, because neither Prewett, the holder of the legal title to the property, nor Grobmyer, the beneficiary therein, was made a party to the action. Jones on Chattel Mortgages, § 503; 75 Ala. 245; Story's Equity Pleading, § 118; 64 Miss. 25; 3 Ark. 382; 86 Ala. 199.

4. The mortgage from Howell to the J. W. Beck Company was intended to secure the debt created by the mortgagor during the year 1909, and it can not be construed as intended to secure any account made subsequent to that year. 50 Ark. 259; 30 Ark. 745; 38 Ark. 285; 1 Jones on Mortgages, § 377; 32 Ark. 601.

*R. J. Williams, M. B. Norfleet* and *Carmichael, Brooks, Powers & Rector,* for appellees.

1. The chancery court had jurisdiction.

(a) To construe section 5415 of Kirby's Digest as applying to actions in equity would make it violative of article 7, section 15, Constitution; 44 Ark. 377; 57 Ark. 528; 80 Ark. 145; 93 Ark. 389; 95 Ark. 618; *Id.* 399.

(b) The statement of the account was not a prerequisite in this case because the mortgagor was disposing of and attempting to dispose of the mortgaged property. 73 Mo. 151; 96 Mo. App. 510; 21 Neb. 50; 36 N. J. Eq. 169; 21 Wend. 509; 73 Fed. 292; 21 Fed. 755; 99 U. S. 28; 26 Am. Dec. 75; 62 Tex. 642.

(c) The plaintiffs actually complied with the provisions of the statute by delivery of a copy of the account to the mortgagor, as is shown by the proof.

2. Because J. W. Beck Company furnished Howell with a copy of the account for the year 1910, it is not

thereby estopped to claim in this suit that he is indebted
to it on the 1909 account, nor is its assignee estopped.

3.  Prewitt, the trustee in the deed of trust, was
not a necessary party.  Kirby's Dig., ·§ 5999.

4.  The mortgage given by Howell to the J. W. Beck
Company was intended to secure, and did secure, any
debt which accrued subsequent to its execution and prior
to the time the books of said company showed a final set-
tlement between the parties.  50 Ark. 256; 55 Ark. 569;
66 Ark. 393; 32 Ark. 598; 33 Ark. 73; Elliott on Con-
tracts, § § 4641-4644.

Same counsel in a supplemental brief say:

1.  The mortgage and deed of trust expressly cov-
ered the increase of the animals conveyed, and the court's
refusal to foreclose appellees' lien thereon was error.
32 Ark. 478; 94 Tenn. 210; 17 L. R. A. (N. S.) 203, and
note; 106 Ia. 78; 79 Miss. 646; 86 Tex. 636; 54 Am. Rep.
576; 36 Mon. 402; 112 Cal. 215; 67 Md. 573; 69 Ia. 504.

2.  One of the mules covered by the deed of trust
proved defective, and the vendor of the mule replaced it
with a good one, thereby substituting the security by mu-
tual consent.

The court erred in refusing to foreclose the lien on
this substituted security.  6 Cyc. 1035.

*J. W. Story,* for appellant, in reply.

In the face of the statute, Kirby's Dig., § 5397,
a mortgage or deed of trust can not by express terms
be extended to or made to cover the increase or offspring
of animals subject thereto. . The statute is plain, un-
equivocal, leaves no doubt as to the Legislature's mean-
ing, makes no exceptions, needs no construction.  93 Ark.
45; 74 Ark. 304; 53 Ark. 422; 31 Ark. 558; 51 Ark. 258.

McCULLOCH, C. J.  Appellants J. O. Howell and W.
H. Howell executed a chattel mortgage to the J. W. Beck
Company on March 27, 1909, to secure a debt of $375,
evidenced by a note, and future advances, to be evidenced
by book account, and on February 3, 1911, they executed
a mortgage, on the same property, to the Fussell-Gra-

ham-Alderson Company, to secure an existing debt and future advances.

Appellee George P. Walker became the owner of the claim of the J. W. Beck Company under the mortgage through purchase from the trustees in bankruptcy, the J. W. Beck Company having been declared a bankrupt and the estate placed in the hands of trustees.

This suit involves a controversy between the rival claimants under the two mortgages.

Appellee Walker filed his complaint in equity to foreclose the mortgage, asserting a lien under the mortgage to the J. W. Beck Company, and the Fussell-Graham-Alderson Company was made a party as junior lienor.

Said appellee also seeks, in the same suit, to foreclose another mortgage executed by the Howells to J. M. Prewett, trustee, to secure a note of $385 executed by them to one Grobmyer, which note was transferred to the J. W. Beck Company, and, in turn, became the property of appellee Walker by purchase from the trustee in bankruptcy.

The unpaid part of the book account of the J. W. Beck Company against the Howells, or the greater part thereof, was for supplies furnished during the year 1910, and the principal controversy is over that part of the account for supplies furnished after the year 1909. It is contended that the debt incurred subsequent to the year 1909 does not constitute a lien under the mortgage.

The recital of the mortgage with respect to the debt secured thereby reads as follows:

"Whereas, the said party of the first part is now indebted to the party of the second part in the sum of $375, as evidenced by his promissory note dated March 27, 1909, and whereas the said second party undertakes and is to furnish the said party of the first part during the year 1909 with supplies, provisions and such other articles of goods, wares and merchandise and moneys as they may see proper and for all indebtedness that may accrue and remain due and unpaid after the said year 1909 until final settlement of said account to be evidenced by the

books of the party of the second part.    Now, if said first
party shall well and truly pay to said second party what-
ever may be due them with the costs of executing this
trust on or before the 15th day of October, 1909, then
this deed shall be null and void; but in case any default
shall be made in the payment of said indebtedness as
herein set forth, or in case of death of the first party, or
should the first party prior to the said 15th day of Octo-
ber, 1909, sell, or attempt to sell, ship, remove, abandon,
or otherwise dispose of the property herein conveyed or
any part thereof, without the written consent of said
second party, then, in either event, the said second party,
or either of them, or their heirs, assigns, or legal repre-
sentatives of either of them, are authorized, empowered
and directed to take possession of the above described
and bargained property, on demand, without process of
law, or so much thereof as will pay off, satisfy and dis-
charge said indebtedness, and to sell the same to the
highest bidder for cash.''

Is this language in the mortgage sufficient to em-
brace an account for supplies furnished after the year
1909?

The universal rule is that a mortgage securing fu-
ture advances is valid.    Some of the authorities go to the
extent of holding that there need be no specification of
the debt, either as to amount or period of time within
which the debt is to be created in order to make the
security valid, it being sufficient if the language of the
mortgage fairly reflects the fact that the parties intended
to create a security for indebtedness to be incurred in the
future; in other words, that a continuing security for
future indebtedness without limit is valid.    Jones on
Chattel Mortgages, § § 94 and 95; 1 Jones on Mortgages,
§ 367; *Robinson* v. *Williams,* 22 N. Y. 380; *Hyland* v.
*Habich,* 150 Mass. 112.

In the Massachusetts case cited above the court had
under consideration a mortgage which was given to se-
cure ''the sum of all indebtedness the said Matthew Hy-
land may now be under to said Edward Habich, and also

the price or value of all such wares, goods or merchandise as may be purchased by or consigned to said Hyland, and all notes and obligations given or to be given therefor." The court said: "The language of the condition in the mortgage impliedly gave the mortgagee a right to sell goods to said Hyland for an indefinite time upon the faith of this security. It was like an ordinary continuing guaranty of payment for goods to be sold, except that, instead of a personal undertaking to pay as a guarantor, it was a transfer of the estate as security for the payment. The mortgagee had the same right to sell, trusting to the security, and there were the same limitations upon his right, as if the mortgagor had given merely a personal continuing guaranty. He had an implied authority from the owner of the mortgaged estate, which was subject to revocation at any time, and which would be revoked by the death of the owner."

This court has had occasion to go no further than merely to hold that a mortgage to secure future advances is sufficient "if the mortgage contains a general description, sufficient to embrace the liability intended to be secured, and to put a person examining the record upon inquiry, and to direct him to the proper source for more minute and particular information of the amount of the encumbrance." *Curtis* v. *Flinn*, 46 Ark. 70.

The particular question presented here is whether the language of the mortgage embraces an account for supplies furnished subsequent to the year 1909. If it does not, then there is no lien.

We have no cases directly in point, but some that throw light upon the question.

In *Curtis* v. *Flinn, supra,* the language of the mortgage was as follows:

"Whereas, the said Robert Haley is justly indebted to the mercantile firm of Stallings & Hunt, and, exclusive of the aforesaid indebtedness, the said Stallings & Hunt may make advances to the said Robert Haley in money, goods or supplies, during the present year to the amount of $100; and the said Robert Haley, being desirous of

securing the full and prompt payment of what he now owes or may hereafter become indebted to the said Stallings & Hunt, this conveyance is now made."

This court held that the language was sufficient to include the indebtedness existing at the time of the execution of the mortgage and also indebtedness thereafter contracted to the amount of $100, but declined to give any intimation, even, that it was sufficient to cover indebtedness thereafter incurred in excess of that amount.

In *Fort* v. *Black,* 50 Ark. 256, a mortgage was given to secure a promissory note of $200, due and payable October 1, 1883, "for supplies furnished and to be furnished." The mortgage was conditioned that if the mortgagor should pay the sum therein mentioned "and all other indebtedness which might (may) then be due" on or before the first of October, then the conveyance should be void. The court held that the future advances were limited to those made on or before October 1 and advances made after that time were not embraced in the mortgage. *Moore* v. *Terry,* 66 Ark. 393, is a similar case.

The clause in the mortgage now before us is very awkwardly drawn and it is to some extent difficult to determine just what it means, but a careful analysis of the language convinces us that, in no view of it can it fairly be construed to include indebtedness for advances made after the year 1909. In the first place, it is very plain that there is no undertaking on the part of the mortgagees to furnish any advances except during the year 1909, and then only such as they might see proper to make. The phrase "and for all indebtedness that may accrue and remain due and unpaid after the said year 1909 until final settlement of said account to be evidenced by the books of the party of the second part," merely refers to the evidence of the indebtedness and does not extend the words of description beyond the preceding clause. If it meant anything else, the preceding clause would be superfluous in referring to the undertaking to furnish supplies during the year 1909. The specification of the undertaking of the mortgagees to furnish supplies

during the year 1909 clearly indicates the intention of the parties to limit the transactions to that period, and in order to extend it beyond that it requires more definite terms than those used in the last clause.

It is further insisted that appellee Walker is estopped to claim anything on account for the year 1909 by the conduct of the Beck Company in furnishing an account which covered only the supplies for the year 1910 and omitted the balance brought over from the year 1909.

Evidence adduced by appellants shows that in February, 1911, the Beck Company gave to Howell the statement of account and that he showed it to the attorney for Fussell-Graham-Alderson Company, who, on the faith of it, took a mortgage from the Howells. It does not appear that the Beck Company knew that the account was to be used for that purpose, and, besides, Mr. Nichols, the vice president of the Beck Company, said enough to the Fussell-Graham-Alderson Company in protest against the latter taking the account, to put the latter on notice. In fact, the Fussell-Graham-Alderson Company took the account over the protest of the Beck Company and without any reliance upon their omission to claim anything. We fail to see how an estoppel can be invoked.

Our conclusion is that the account for supplies furnished subsequent to the year 1909 does not constitute a lien on the property in controversy and that the chancellor erred in so holding.

Appellant raises the question that an itemized account, as required by statute, was not furnished in this case before the suit was instituted to foreclose.

But we think the evidence fairly discloses the fact that such an account was filed. It is exhibited with the complaint and attached to it is a certificate of the sheriff showing service upon the mortgagor. There is no direct allegation in the complaint nor denial in the answer concerning this, but the exhibit of this account with the complaint was manifestly treated by the parties as an alle-

gation that the account had been served and there is every indication that the case was tried upon the theory that the account had, beyond dispute, been duly served.

The only attack made upon the decree foreclosing the Grobmyer mortgage is that Prewett, the trustee, and Grobmyer, the original beneficiary, were not made parties.

The original beneficiary was not a proper party, as he had parted with his interest in the debt.

The trustee in a mortgage on land is a necessary party to a foreclosure proceeding. 2 Jones on Chattel Mortgages, 1397.

The conveyance of chattels to a trustee as security for debt to another places the legal title in the trustee, and he alone can maintain an action at law to recover possession for the purpose of foreclosing the lien under the power contained in the conveyance.

Whether, in a suit in equity to foreclose a chattel mortgage, the trustee is a necessary party, we need not decide. The title to chattels passes by delivery and it might be held that where the real parties in interest were before the court it is unnecessary to have the trustee in order to divest the legal title; but, be that as it may, we think that appellants are not prejudiced by the failure to make the trustee a party.

Appellees cross-appealed from that part of the decree which refused to declare a lien on four colts of the mares described in the mortgage.

The mortgage to the Beck Company expressly referred to "the increase" of the mares.

The common law rule was that the owner of the dam was the owner of the offspring before birth and after, and therefore a mortgage on the dam carried with it a lien on the after-born offspring or increase.

The common law rule was, however, changed by statute of this State enacted by the Legislature of 1891 (Kirby's Digest, § 5397), which reads as follows:

"The lien of a mortgage or other incumbrance shall

not extend to, nor cover the increase of an offspring of an animal that is subject to such lien.''

The manifest intention of the lawmakers was merely to change the common law rule, and not to prohibit the creation of a mortgage lien upon that kind of property not in being at the time of the execution of the mortgage. The language clearly indicates that the lien referred to was that which, by the terms of the mortgage, included the dam, and it was only intended to prevent that lien from extending to the offspring or increase, and not to prohibit the giving of a mortgage which did include the offspring. If a different meaning had been intended, more appropriate language would have been used.

Since the passage of that statute a mortgage executed upon property not *in esse* is not enforcible at law, but a mortgage on after-acquired property or property which is to come into being is good in equity. When the property comes into being the mortgage lien attaches to it in equity and is good against the mortgagor and subsequent holders with notice. *Apperson* v. *Moore*, 30 Ark. 56; *Jarratt* v. *McDaniel*, 32 Ark. 598-601.

Our conclusion is, therefore, that as this mortgage expressly named the increase or offspring of the animals described in the mortgage, that was sufficient to constitute an equitable lien, which became fixed on the colts as soon as they came into being.

There is another question raised on the cross-appeal which relates to the refusal of the court to declare a lien on property which the parties to the mortgage had orally agreed should be substituted for that in the mortgage.

The testimony establishes the fact that the note to Grobmyer covered the price of some of the mules sold by Grobmyer to the mortgagors, which were embraced in the mortgage. One of the mules afterward developed defects and Grobmyer agreed to furnish another in its place, and it was verbally agreed that the mule should be substituted in the mortgage for the one taken back. When the note was assigned to appellee Walker, its was understood between him and the mortgagors that the

substituted mule should be considered embraced in the mortgage. It was not included in the mortgage to Fussell-Graham-Alderson Company. Such is the substance of the meager testimony on that subject.

The agreement for substitution is in equity valid between the parties to the mortgage. Jones on Chattel Mortgages, § 154; *Marx* v. *Davis,* 56 Miss. 745; *Sharp* v. *Pearce,* 74 N. C. 600; *Leeds* v. *Reed,* 36 S. W. (Tex.) 347; *Rodes* v. *Haynes,* 33 S. W. (Tenn.) 564. This upon the theory that equity treats that as done which the parties intended should be done.

Inasmuch as the mule was not included in the mortgage to Fussell-Graham-Alderson Company and the rights of third parties are not involved, appellee Walker is entitled to foreclosure on the substituted mule.

The decree is reversed with directions to proceed with the foreclosure of the Grobmyer mortgage and so much of the original Beck Company mortgage as includes the account of 1909 which constitutes a lien as herein indicated.