JOHNSON *v.* UNION BANK & TRUST COMPANY.

Opinion delivered October 17, 1927.

1. HUSBAND AND WIFE—FORECLOSURE OF MORTGAGE ON WIFE'S PROP-
   ERTY.—Where a mortgage on a married woman's separate parcels
   of land provided that it should be security for any extensions
   or renewals of the whole or any part of the indebtedness thereby
   secured, and for any other liability from the mortgagor con-
   tracted to the mortgagee, and undisputed testimony showed the
   money thereby obtained and other advances obtained was used
   for building on the wife's property, on foreclosure it was proper
   to require the sale of the wife's property, in view of the fact that
   all payments on notes were made by the husband out of his own
   funds, and the undisputed testimony showed that the loan was
   never reduced below the amount of the original note.

2. HUSBAND AND WIFE—LOAN TO WIFE—EVIDENCE OF NON-PAYMENT.—
   In an action to foreclose a mortgage secured by a wife's separate
   property, where the money obtained was used in building on the
   wife's property, evidence *held* to support a finding that the
   original loan had not been paid.

3. HUSBAND AND WIFE—ADVANCEMENT.—In a suit to foreclose a
   mortgage secured by the wife's separate property, given to obtain
   money for building on the wife's property, evidence *held* not to
   show that the loan was a gift or advancement by the husband to
   the wife.

Appeal from White Chancery Court; *W. P. Beard,*
Special Chancellor; affirmed.

### STATEMENT BY THE COURT.

This appeal is prosecuted by the heirs of Susie Crab-
tree, deceased, from a decree foreclosing the mortgage of
the appellee bank against her lands for payment of debts
secured thereby.

The Union Bank & Trust Company brought suit
on May 1, 1926, for foreclosure of the trust deed against

A. A. Crabtree and the appellants, the heirs at law of Susie Crabtree.

On the 20th day of May, 1921, A. A. Crabtree and his wife, Susie Crabtree, executed their note to the Union Bank & Trust Company for $882, payable six months after date, with 10 per cent. interest, and, to secure the payment thereof, executed a deed of trust to James E. Lightle, as trustee, conveying five lots in the city of Searcy, owned by Susie Crabtree, and 80 acres of land in Jackson County, owned by A. A. Crabtree. The indebtedness was renewed from time to time and additional sums of money borrowed, until there was due December 9, 1924, on the indebtedness $1,676.42, with interest. At no time was the indebtedness to the bank ever reduced below the original amount borrowed, according to the undisputed testimony of the president of the bank. The money originally borrowed was all used in reconditioning and repairing the house, which had been burned, on the lots in Searcy owned by Susie Crabtree, and no part of the original loan was used for the benefit of A. A. Crabtree, as the court below found.

Susie Crabtree died intestate, leaving as her heirs the defendants, against whom the suit was brought, the appellants herein.

The deed of trust contained the following clause:

"It is also agreed that the foregoing conveyance shall stand as a security for the payment of any extensions or renewals of the whole or any part of said indebtedness in lieu thereof; also as security for the payment of any other liability or liabilities of the grantor already or hereafter contracted to the said Union Bank & Trust Company, until the satisfaction of this mortgage or deed of trust upon the margin of the records thereof, together with interest at the rate of ten per cent. per annum."

Crabtree testified that it was necessary to borrow the money for reconditioning the house that had burned upon the lots in Searcy, that more than the amount borrowed was required and was used, the $1,000 insurance collected, and $600 of his own money was put into the improvement.

Mr. Lightle, its president, who made the loan for the bank, stated that it was handled by Mr. Crabtree and secured for the purpose of repairing the house belonging to Mrs. Crabtree, which had burned. The note was executed by Mr. Crabtree and Susie Crabtree, his wife, for $882; that he never saw Mrs. Crabtree any more after she executed the note and mortgage; that afterwards Crabtree obtained other advances, and the notes were renewed once or twice, the renewals including the interest, and all payments that were made on the notes were made by Crabtree, who alone executed the renewal notes, the bank not regarding it necessary for them to be signed by Mrs. Crabtree after her execution of the mortgage. He stated that the loan had never been reduced below the amount the original note was executed for.

The chancellor found that all the money for which the original note was executed was used in reconditioning the improvement on the lots of Susie Crabtree in Searcy, and that no part of it was for the benefit of A. A. Crabtree; that all payments made on the indebtedness had been made by defendant, A. A. Crabtree, out of his own funds; that there was $1,676.42 due, with interest, for payment of which the bank had a lien under its mortgage. The decree charged the lots in Searcy, which belonged to the heirs of Susie Crabtree, with payment of $882 of the debt, with interest, and the proportionate parts of the costs of the suit, and that the lands of A. A. Crabtree in Jackson County should be charged with the remainder of the debt and costs, and ordered that the Searcy lots should be sold first and separately, and, if they brought more than the said sum of $882, interest and costs, that the Jackson County lands should be sold for the balance due under the decree, and the surplus arising from the sale of the Searcy lots over and above the amount charged to them shall be paid to the defendants, and from this decree the appeal is prosecuted.

On October 2, 1926, the Searcy lots were sold by the commissioner for $1,605. The sale was objected to by appellants, and exceptions filed by them, so far as it affected the Searcy property, and the sale was set

aside, the defendants being given 30 days in which to pay into the registry of the court the amount adjudged to be due under the mortgage and secured by the lien upon the property. The plaintiff and the purchaser excepted to this ruling, and prayed an appeal.

*John E. Miller* and *Culbert L. Pearce,* for appellant.

*Brundidge & Neelly,* for appellee.

KIRBY, J.    The undisputed testimony shows that the loan was procured and the money used for the benefit of the property of Susie Crabtree, which was mortgaged to secure the payment of it.   The president of the bank stated that they knew the amount of insurance collected, and that it was necessary to have this money for completing the improvement in addition to the insurance and the amount of money advanced by A. A. Crabtree.

Crabtree stated that all of said sum of money was borrowed from the bank for the purpose of making the improvement on Mrs. Crabtree's property and so used, in addition to the insurance collected and the $600 he had advanced, for which no claim was made; that the money could not be borrowed upon the security of the Searcy lots only, the property of his wife, but, in addition, he had to include the 80 acres of his land in Jackson County.

The testimony also shows that all payments made were made by Crabtree out of his own funds, and that the amount of the indebtedness was never reduced below the amount of the original loan.   The mortgage provided that it should be security for the payment of any extensions or renewals of the whole or any part of said indebtedness in lieu thereof, and also for the payment of any other liability or liabilities of the grantor already or thereafter contracted to the said Union Bank & Trust Company, until the satisfaction of the said deed of trust upon the margin of the record thereof.

This provision is inclusive, and only needs interpretation according to its plain meaning and intent, and must be interpreted to mean what it says.   Certainly there is no inequity in requiring the sale of the property

belonging to Mrs. A. A. Crabtree for the payment of her debt secured by it, which the undisputed testimony in fact showed never to have been reduced below the amount of the original note. *Howell* v. *Walker,* 111 Ark. 362, 164 S. W. 746; *Word* v. *Cole,* 122 Ark. 457, 183 S. W. 757; *Hollan* v. *Amer. Bank of Commerce & Trust Co.,* 168 Ark. 939, 272 S. W. 654.

There was some testimony indicating that the original note had been marked paid and delivered to Mrs. Crabtree. The testimony shows, however, that moneys paid to the bank had been paid by Crabtree, and that the amount of the indebtedness had not been reduced below the amount of the original note, which had been renewed several times, and may have been marked "Paid" on renewal. The president also testified that Mrs. Crabtree was never in the bank after the execution of the original note and mortgage there. The testimony supports the chancellor's finding that the original loan had not been paid off; and, even though it had, the mortgage could have been kept alive and necessarily continued to be an existing security for any and all renewals of the original note and any other indebtedness secured by it, so far as the rights of the parties and privies are concerned. It could have been kept alive for other purposes where the intention of the parties was, as here, that it should be, no rights of third persons or creditors having intervened. 41 Corpus Juris 787.

We do not think there is any merit in appellant's contention that the loan should be considered a gift or advancement by the husband to the wife, within the doctrine of the cases cited. A contrary intention was shown by the evidence on the part of the parties resulting in the mortgage given, charging the separate property with a lien for the payment of the loan, which the chancellor correctly found had not been, in fact, paid. Only the amount of money borrowed and used in the improvement of the wife's property was charged against it, as secured by the lien under the mortgage, and we do not find it necessary to determine from the state of the record whether or not the wife's separate property

mortgaged to secure present and future indebtedness could be held to the payment of other moneys than the original loan, thereafter borrowed.

We find no error in the record, and the judgment is affirmed.