SHINN *v.* KITCHENS.

4-7539                                   186 S. W. 2d 168

Opinion delivered March 19, 1945.

*Surrey E. Gilliam* and *Melvin Chambers,* for appellant.

*W. H. Kitchens, Jr.,* for appellee.

McFADDIN, J. Appellants seek to reverse a judgment and decree of foreclosure rendered in favor of the appellees, who were plaintiffs below. The events which culminated in the decree took place over a period of several years.

In 1929, I. B. Shinn and wife desired to build a home on their real estate near Magnolia. Shinn sought a loan from Wade Kitchens, who, for a consideration, agreed to help Shinn get the money; and these events occurred:

(1) Shinn and wife on June 26, 1929, executed a note to Peoples' Bank for $1,323, and secured the same by a real estate deed of trust, which we call "Deed of Trust A."

(2) Kitchens indorsed the note and executed to Shinn a written instrument of protection; and as payment for the indorsement and letter of protection, Kitchens received a cash fee of $100. The written instrument from Kitchens to Shinn was as follows:

"For a valuable consideration, I hereby bind and obligate myself to protect you against foreclosure on a deed of trust this date executed by you and your wife to the Peoples Bank of Magnolia, covering:

The NE¼ of the NE¼ and the NW¼ of NW¼, and 6 acres in the NE corner of the NE¼ of SW¼, all in section 2, township 17 south, range 21 west, Columbia county, Arkansas, and a note for the sum of $1,320, bearing ten per cent. per annum as interest until paid, and secured by said deed of trust, for a term of five years from this date, providing and on condition that you pay each year as much as $240 on the principal and the interest, and on the further condition that you keep the taxes regularly paid when due.

"If it be necessary, I shall take up said note and deed of trust and have same assigned to me and I will then be the owner of same. I also agree, for said consideration, to sign said note with you as surety, with the right to be substituted for the payee in case I have to take up said note and deed of trust.

"Witness my hand this the 25th day of June, 1929."

(3) On September 28, 1929, the Shinns needed additional money, and executed a note to Peoples Bank for $663 due June 26, 1930, and secured the same by another real estate deed of trust which we call "Deed of Trust B." Kitchens likewise indorsed this note, and received as his fee the sum of $50. This note bore the notation "this note secured by second D/T on our home place; also secured by prior D/T."

(4) On December 11, 1929, the Shinns needed additional money, and executed a note to Peoples Bank for $808 due October 11, 1930, and secured the same by a deed of trust on real and chattel property, called "Deed of Trust C." Kitchens likewise indorsed this note, and received as his fee the sum of $50. This note bore the notation "it is agreed that this note be and the same is also secured by two other deeds of trust held by payee on our homestead."

The total of the three notes was $2,794, and each note bore interest at the rate of 10 per cent. per annum from date until paid. Each of the three deeds of trust (A, B and C, as above noted) was to "Clyde Fincher as trustee, of the second part, and the Peoples Bank of Magnolia, Arkansas, of the third part." And each deed of trust was security for the particular note therein described, and also for any and all other indebtedness.

When the notes became due the Shinns were unable to pay same, and on December 30, 1930, Kitchens acquired the three notes and three deeds of trust from the bank. Kitchens did not pay the notes in cash, but gave the bank his own note for $4,194, which included the total of the three Shinn notes and interest, and also some other indebtedness of Kitchens to the bank; and Kitchens secured this $4,194 note in some way satisfactory to the bank, so that on December 30, 1930, each of the three Shinn notes was indorsed "Pay to the order of Wade Kitchens without recourse, Peoples Bank by W. A. Boyd, Cashier." Kitchens left the three Shinn notes at the bank

along with other collateral as security for Kitchens' own note.

In November, 1931, the Shinns paid Kitchens $200 on the notes; and on November 30, 1932, the Shinns delivered cotton to Kitchens at an agreed price of $174.22; and this was offered by the Shinns, and taken by Kitchens, as a credit on the Shinn notes. In 1933, the bank was restricted by orders of the Federal Government; and Kitchens still owed the bank $4,194, and the bank still held the Shinn notes as part of the collateral. In an endeavor to get fresh bankable paper the bank proposed that it would take a new note from the Shinns for $2,794 if secured by a first mortgage on the homestead. The deeds of trust, A, B and C, already covered the homestead of the Shinns.

There is a sharp dispute in the testimony about the intent, purpose and effect of this transaction; and the contentions of the various parties will be discussed in section II of this opinion. At any rate the Shinns executed a new note to the Columbia-Peoples Bank for $2,794, and executed a mortgage on the homestead to secure the note. The three old notes of Shinn, as previously identified, were left at the bank, and shortly thereafter were delivered to Kitchens; and he agreed to subrogate the liens of the deeds of trust A, B and C to the lien of the new mortgage to the Columbia-Peoples Bank., There is testimony in the record that Kitchens later paid the bank the full balance of his $4,194 note.

On April 11, 1935, this suit was filed by Kitchens and Clyde Fincher, as trustee, against the Shinns for judgment for the balance due on the three Shinn notes and accumulated interest, less the three credits of $200, $174.22 and $2,794, as aforesaid. This balance at the time of filing the suit was $909.02 with interest calculated to April 11, 1935. Plaintiffs asked for a foreclosure of the deeds of trust A, B and C. The defendants by answer admitted the execution of the three notes and the three deeds of trust sued on, but pleaded various defenses which we will enumerate and discuss in this opinion. The case suffered various continuances; but on March 13,

1944, the chancery court rendered a judgment for Kitchens for the balance claimed and accrued interest, and decreed a foreclosure of the deeds of trust A, B and C. To reverse that decree, the Shinns prosecute this appeal, presenting the issues herein discussed.

I. *Defect of Parties.* The foreclosure suit was originally filed in the name of Clyde Fincher, the trustee named in the three deeds of trust, and Wade Kitchens, as the assignee of the notes, secured by the three deeds of trust. The trustee named in the deeds of trust was a necessary party at the institution of the foreclosure suit, as also, of course, was Kitchens, the holder of the indebtedness. *Howell* v. *Walker,* 111 Ark. 362, 164 S. W. 746; *Snider* v. *Dennis,* 159 Ark. 231, 251 S. W. 682; *Beloate* v. *New England Securities Co.,* 165 Ark. 571, 265 S. W. 83. After the filing of the suit and before the decree, Clyde Fincher died; and Wade Kitchens indorsed on the margin of the record where each of the deeds of trust A, B and C was recorded, this notation, which was duly attested by the clerk as an ex-officio recorder: "Clyde Fincher having died, I hereby appoint G. T. Kitchens as trustee this August 26, 1943, Wade Kitchens, assignee and owner." The fact of this indorsement was shown in the evidence. No formal order of the court was made showing the substitution of G. T. Kitchens as trustee in the place of Clyde Fincher; but on February 4, 1944, an amendment was filed by Kitchens (involving some detail of pleading), and in that amendment the plaintiffs were listed as "G. T. Kitchens as trustee and Wade Kitchens." In the decree, from which there is this appeal, the plaintiffs were listed as "G. T. Kitchens as substituted trustee, and Wade Kitchens."

While it would have shown greater nicety if a formal order had been entered substituting G. T. Kitchens as trustee for Clyde Fincher, nevertheless, we hold that the substitution was in fact recognized by the court; and such recognition satisfies any possible legal requirement. Each of the three deeds of trust (A, B and C) contained this language: "provided further, that in case of the death of the said Clyde Fincher, or his removal, refusal or

inability to act as trustee herein, then the said Peoples Bank of Magnolia, its agent, assignee or representatives are hereby authorized to appoint some other person to act as trustee herein . . .'' Wade Kitchens as the assignee of the notes had the right to make the appointment of G. T. Kitchens; and this was accomplished. G. T. Kitchens was thus a party before the decree was rendered, even if a substitute trustee be a necessary party. See *Less* v. *English,* 75 Ark. 288, 87 S. W. 447; *Snider* v. *Dennis, supra;* and Annotation in 98 A. L. R. 1171.

II. *Accord and Satisfaction.* The Shinns admitted the execution of the three notes, and the three deeds of trust sued on, but claimed that when they executed the note for $2,794 to Columbia-Peoples Bank, that note was in full for all they owed on the three original notes, and that Kitchens so agreed. Thus, they pleaded accord and satisfaction (1 Am. Juris. 125); and of course the burden was on them to sustain the plea. *Western Union Telegraph Co.* v. *Arkadelphia Milling Co.,* 156 Ark. 370, 246 S. W. 482. It was incumbent upon them to prove that *Kitchens* agreed that the execution of the new note was in full settlement of the three old notes, because at all times after December 30, 1930 (when the three old notes were indorsed to him without recourse), Kitchens was the owner of the notes. I. B. Shinn positively testified that Kitchens agreed with him that the execution of the 1933 note to the Columbia-Peoples Bank would satisfy Kitchens in full. Kitchens denied any such statement, and claimed that he agreed that the $2,794 note would be credited on the Shinn indebtedness, and that Shinn would owe Kitchens the balance.

To support the plea of accord and satisfaction, appellants showed that two of the original Shinn notes bore the stamp of the bank ''renewed,'' placed thereon at the time of the execution of the 1933 note. We regard that stamping as having no great significance. What the bank, as the holder of Kitchens' collateral, may have stamped on the notes, in the absence of Kitchens and without his direction, cannot be binding on Kitchens. Besides, the failure to stamp *all* of the notes is a circumstance tend-

ing to show that there was no understanding *at that time* that the total indebtedness was merged into the 1933 note, because one of the notes was left unstamped.

It would serve no useful purpose to review all of the evidence. In view of the facts, (1) that Shinn did not get his old notes at the time he delivered the 1933 note to the bank, (2) that the bank delivered the old notes to Kitchens, the indorsee, and (3) that the three deeds of trust, A, B and C, were never satisfied—in view of these facts—we are unable to say that the chancery court decided against the preponderance of the evidence when it rejected the appellants' plea of accord and satisfaction. See 1 Am. Juris. 261. So we affirm the holding of the chancellor on this point.

III. *Limitations.* The appellants claimed that by Kitchens' own testimony he was only a surety on the three original 1929 notes; and that he had the notes indorsed to him on December 30, 1930; and did not file suit until April 11, 1935. On these facts the appellants pleaded the three-year statute of limitations; and in support thereof appellants cite the following cases and authorities: *Hazel* v. *Sharum,* 182 Ark. 557, 32 S. W. 2d 315; *Cooper* v. *Rush,* 138 Ark. 602, 212 S. W. 94; *Pennington* v. *Karcher,* 171 Ark. 828, 286 S. W. 969; *Snider* v. *Greathouse,* 16 Ark. 72, 63 Am. Dec. 54; *Hill* v. *Wright & Co.,* 23 Ark. 530; 13 Am. Juris. 75; 50 C. J. 247; *Gieseke* v. *Johnson,* 115 Ind. 308, 17 N. E. 573; *Kreider* v. *Isenbice,* 123 Ind. 10, 23 N. E. 786; *Hazleton* v. *Holt* (Tex.), 285 S. W. 1115; *Hays* v. *Housewright* (Tex.), 133 S. W. 922; *McCavick* v. *McBride* (Tex.), 189 S. W. 795; *Faires* v. *Cockrill,* 88 Tex. 428, 31 S. W. 190, 28 L. R. A. 528; *Miller* v. *Zeigler,* 3 Utah 17, 5 Pac. 518; *Bray* v. *Cohn,* 7 Cal. App. 124, 93 Pac. 893; *Crystal* v. *Hutton,* 1 Cal. App. 251, 81 Pac. 1115; *Fitch* v. *Hammer,* 17 Colo. 591, 31 Pac. 336; *Goodwin* v. *Davis,* 15 Ind. App. 120, 43 N. E. 881; *Campbell* v. *Tomlinson,* 178 Ind. 63, 98 N. E. 720; *Yule* v. *Bishop,* 133 Cal. 574, 65 Pac. 1094; *Harrah* v. *Jacobs,* 75 Iowa 72, 39 N. W. 187, 1 L. R. A. 152; *Tripp* v. *Harris,* 154 N. C. 296, 70 S. E. 470; *Zuellig* v. *Hemerlie,* 60 Ohio St. 27, 53 N. E. 447, 71 Am. St. Rep. 707. These cases and

authorities are full support for the statement that when a surety sues a principal for the amount paid by the surety on the note of the principal, the action is based on an *implied contract,* and is covered by the three-year statute of limitations; which in Arkansas is § 8928 of Pope's Digest.

But even if this rule should apply here (on which we express no opinion in view of the written contract of guaranty) the appellants overlook the fact that part payments toll the statute. In *Trustees of Real Estate Bank* v. *Hartfield,* 5 Ark. 551 (decided in 1844), this court held that part payment on the debt before the obligation was barred by limitations, constituted an admission of the debt and formed a new point from which the statute began to run. This is the sense in which we use the expression "part payment tolls the statute"; and our cases have followed that rule consistently. *Less* v. *Arndt,* 68 Ark. 399, 59 S. W. 763; *McAbee* v. *Wiley,* 92 Ark. 245, 122 S. W. 623; *Fendley* v. *Schults,* 142 Ark. 180, 218 S. W. 197. See, also, 37 C. J. 1142 *et seq.* and 34 Am. Juris. 262 *et seq.*

Kitchens' cause of action accrued on December 30, 1930; but in November, 1931, appellants paid Kitchens $200 on the notes. Then on November 30, 1932, appellants delivered Kitchens cotton at the agreed price of $174.22, which was offered by the appellants as a payment on the notes, and so accepted by Kitchens. For a part payment to toll the statute there must be an intent that it is a part payment. See 37 C. J. 1144. Tested by this rule, the payment of November 30, 1932, was certainly a part payment, regardless of the 1933 note. The payment of November 30, 1932, gave Kitchens three years—or until November 29, 1935—to file suit even if the three-year statute applied. He filed this suit on April 11, 1935; so that the three-year statute of limitations is not a good defense, even if it applies to a case like this one.

IV. *The Amount of the Judgment.* Appellants claim that the amount of the judgment is excessive on either one of two contentions, to-wit:

1. Each time that Kitchens indorsed Shinn's note in 1929, Kitchens received a fee, the amounts being $100, $50 and $50, totaling $200. Appellants insist that Kitchens should give Shinn credit for this $200. But it must be remembered that, for this $200, Kitchens indorsed Shinn's notes and gave Shinn a written letter of protection. Kitchens had a right to charge for this suretyship and guaranty. It is not argued in the brief that this was a cloak for usury.

2. Some time after Kitchens had indorsed the Shinn notes, he interested J. B. Wilson in becoming a partner with Kitchens in the Shinn matter. Wilson, who had sustained a loss of $500 in a transaction with Shinn, hoped to recover something on that loss by associating himself with Kitchens in the three Shinn notes and deeds of trust. Wilson paid Kitchens a total of $262.61, which was used by Kitchens to pay insurance premiums and interest at the bank. Then Wilson decided to withdraw from his association with Kitchens; and did so in 1932.

On the record of this transaction the appellants claim that they should receive credit for the amount that Wilson paid Kitchens. Appellants have cited us to no authorities to sustain such a contention, and we have been unable to find any such authorities. It is true that a surety can recover from the principal only what the surety paid. As stated in 50 Am. Juris. 1069:

"Thus, if a surety has paid the principal's obligation in depreciated bank notes taken at par, he can recover only the actual value of the bank notes so paid and received, and if he has paid in property, he can recover only the value of the property. If he has compromised, he can recover only what the compromise cost him. The rule is that he shall not be allowed to 'speculate out of his principal.' "

Our own case of *Jordan* v. *Adams,* 7 Ark. 348, is one of the leading cases cited to sustain the above rule. See, also, *Bone* v. *Torrey,* 16 Ark. 83; and see, also, 50 C. J. 274.

But in the case at bar Kitchens neither made a compromise with the creditor nor paid in depreciated

currency. Wilson's acts, in becoming a partner with Kitchens for a consideration and later withdrawing, were without the solicitation or prior knowledge of Shinn; and it is not claimed that Shinn has ever paid, or even owes, Wilson any of the money that Wilson paid Kitchens. There is no privity between Wilson and Shinn as regards this matter. So far as Shinn is concerned, Kitchens might just as well have found the money while walking to the bank to see about the Shinn notes. Shinn's liability to Kitchens was and is to pay him what Kitchens paid the bank and interest thereon. The voluntary gift that Kitchens received from Wilson does not operate to discharge Shinn's obligation to Kitchens. Our holding on this point is an application of the maxim: *res inter alios acta, alios nec prodest nec nocet (i.e.)* "a transaction between other parties neither benefits nor injures those not interested." See *Henry* v. *Woods,* 77 Mo. 277; *American Dirigold Corp.* v. *Dirigold Metals Corp.* (6th C.C.A.), 125 Fed. 2d 446; and see, also, 54 C. J. 715. In 50 C. J. 248, in discussing the surety's right to reimbursement, it is stated:

"The rights of sureties against the principal are not affected by any private arrangement among themselves for the distribution of liability, or by the particular manner in which the relation arose."

V. *Overlapping Indebtedness.* Appellants claim that the chancery court foreclosed all three deeds of trust (A, B and C) for items of indebtedness that were separate, *i.e.,* each deed of trust secured its own note. In making this contention, appellants doubtless overlooked the provision found in each deed of trust to the effect that it was security for the note therein described, *and any and all other indebtedness.* This provision in each deed of trust is a complete answer to appellants' contention.

VI. *Description of Property Foreclosed.* Finally, appellants claim that the description of the lands, as contained in the foreclosure decree, is different from the descriptions as contained in the deeds of trust, A, B and

C. It is true that the description contained in the foreclosure decree omits several tracts of real estate and items of personal property that are contained in the three deeds of trust; but nothing is included in the description in the decree that was not included in one or the other of the deeds of trust, A, B and C. There is no showing that the failure to include all the mortgaged lands will adversely affect appellants.

Finding no error, the decree of the chancery court is in all things affirmed.